Filed 8/18/16  P. v. Rodriguez CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>GUSTAVO RODRIGUEZ,<br><br>　　　　Defendant and Appellant. | B265798<br><br>(Los Angeles County<br>Super. Ct. No. BA143618) |

　　　　APPEAL from a judgment of the Superior Court of Los Angeles County, Samuel Mayerson, Judge.  Affirmed.

　　　　Ferrentino & Associates, Correen Ferrentino, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　　Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Noah P. Hill, Mary Sanchez, and Andrew S. Pruitt, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant and appellant Gustavo Rodriguez, who had two prior convictions as defined in the three strikes law, was sentenced in 1988 to concurrent indeterminate terms of 26 years to life following his convictions for unlawfully taking a vehicle (Veh. Code § 10851, subd. (a)), grand theft (Pen. Code, § 487),[1] and petty theft with a prior theft conviction (§ 666).[2] After the 2012 passage of Proposition 36 (the "Three Strikes Reform Act," hereafter "the Act"), defendant filed a petition under section 1170.126 to recall his indeterminate sentence and to be resentenced as a second strike offender. The trial court denied the petition, finding that defendant posed an unreasonable risk of danger to public safety.

Defendant contends the trial court applied an incorrect standard when evaluating whether he posed an unreasonable risk of danger to public safety. He argues that the narrow definition of unreasonable risk contained in section 1170.18, which was added by initiative measure Proposition 47 ("The Safe Neighborhoods and Schools Act") in 2014, applies to resentencing petitions under the Act, such as his, which were still pending at the time the initiative became effective.[3] He further contends the evidence is insufficient to support the trial court's finding that he poses an unreasonable risk of danger to public

---

[1] All future statutory references are to the Penal Code unless otherwise specified.

[2] On direct appeal this court ordered the judgment modified to stay the sentence imposed for the petty theft with a prior theft conviction as a lesser included offense of grand theft, strike one prior prison term allegation, apply the prior prison term enhancement once rather than on every count, and increase defendant's presentence conduct credits, but otherwise affirmed the conviction and sentence. (*People v. Rodriguez* (February 4, 1999, B121090) [nonpub. opn.].)

[3] Under Proposition 47, "'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667." (§ 1170.18, subd. (c).) The phrase "unreasonable risk of danger to public safety" is not defined in the Act, but factors the court "may consider" include a defendant's criminal history, disciplinary record and record of rehabilitation, and any other evidence the court deems relevant. (§ 1170.126, subd. (g)(1)-(3).)

safety.

We affirm the court's order denying defendant's petition for resentencing. The issue of whether the Act's definition of unreasonable risk of danger to public safety was repealed and replaced with the standard in Proposition 47 is currently pending before the California Supreme Court.[4] For purposes of this appeal, we reject defendant's argument and conclude the People's position reflects the better view of the Act's definition of unreasonable risk of danger to public safety. Because this case will be governed by our Supreme Court's ultimate resolution of the issue, we do not discuss it further. We also hold that substantial evidence supports the trial court's findings on defendant's unreasonable risk of danger to public safety.

## FACTS AND PROCEDURAL HISTORY

**Strike Convictions and Commitment Offenses**

### First Strike

On July 5, 1985, defendant stole money from an open cash register at a bar. During the commission of the crime he struggled with an employee who attempted to close the register. The employee yielded when defendant said that his friend had a gun.

Defendant was convicted of robbery (§ 211) and sentenced to two years in state prison.

### Second Strikes

On February 26, 1993, defendant used a pretense to gain entry to a 12-year-old

---

[4] *People v. Chaney* (2014) 231 Cal.App.4th 1391, review granted February 18, 2015, S223676, and *People v. Valencia* (2014) 232 Cal.App.4th 514, review granted February 18, 2015, S223825.

3

boy's house. He threw the boy down and held a sharp object to his neck. Two accomplices entered the house and stole approximately $4,000 worth of property.

On March 14, 1993, defendant and his accomplices stopped the boy on the street, threatened him with a knife and warned that they would kill him if he talked to the police. One of the accomplices attempted to stab the boy, but he managed to escape.

Defendant was convicted of second degree robbery (§ 211) and dissuading a witness by force (§ 136.1). The allegation that he personally used a deadly or dangerous weapon in the commission of the crime was found true. (§ 12022, subd. (b).) Defendant was sentenced to seven years in state prison.

### Commitment Offenses

On January 1, 1997, defendant and an accomplice broke into a van parked in front of a residence and tore out the ignition switch. They pushed the van to a nearby alley. Defendant was apprehended while removing $3,250 worth of gardening equipment from the van.

The jury convicted defendant of unlawfully taking a vehicle, grand theft, and petty theft with a prior theft conviction. The trial court found true the allegations that defendant had suffered two prior serious felony convictions under the three strikes law (§ 1170.12), and had served one prior prison term within the meaning of section 667.5, subdivision (b). His 26 years-to-life state prison sentences are the subject of this appeal.

## The Section 1170.126 Petition and Facts As Accepted by the Trial Court

### The Petition

On February 14, 2013, defendant filed a petition seeking recall of his three strikes sentence on the basis that his commitment offenses were not serious or violent felonies. The trial court found that defendant made a preliminary showing of eligibility with

4

respect to his convictions under sections 487 and 666.  The prosecution opposed the petition on suitability grounds, and the trial court held a contested suitability hearing.  On July 13, 2015, the trial court denied the petition on the basis that defendant posed an unreasonable risk of danger to the public safety.

**Facts**[5]

We set forth the facts in the light most favorable to the trial court's ruling.[6]  Defendant's criminal history began at the age of 10, when he snatched a purse containing $1,000 from a woman.  A juvenile petition for receiving stolen property was sustained.  (§ 496.)  Three years later, on November 17, 1979, defendant and two cohorts stole a woman's purse and beat her.  They then attempted to steal a purse from a second woman, but a security guard intervened and began to chase them.  Defendant jumped into a

---

[5] We recognize that defendant presented expert opinion testimony by Richard Subia, who had 26 years experience working in the Department of Corrections and Rehabilitation, reaching high ranking positions within the Department.  Subia concluded that defendant did not pose a current risk of danger to public safety.  Subia downplayed defendant's criminal record and prison misconduct, but the trial court impliedly rejected Subia's theories.  Subia was not a percipient witness to any of the events in this case, and the trial court's rejection of his opinion of the defendant's conduct was well within the court's discretion as finder of fact.

Our discussion focuses on the facts as found by the trial court.

[6] At the suitability hearing, the prosecution introduced tables of defendant's criminal history and disciplinary record in prison, as well as defendant's California Law Enforcement Telecommunications System criminal history; the court of appeal opinion, abstract of judgment, and preliminary hearing transcript for the commitment offenses; probation reports, preliminary hearing transcripts, and abstracts of judgment in connection with defendant's prior convictions; petitions, probation reports, adjudication transcripts, and appellate reports relating to his sustained juvenile petitions; certification documents from the California Department of Correction and Rehabilitation (CDCR); reports pertaining to defendant's 15 prison rules violations; counseling chronos; a list of defendant's enemies; CDCR reclassification score sheets for April 30, 2014, through March 31, 2014; a Threat Assessment dated December 20, 2013; and an Annual Review dated May 8, 2013.

getaway car with his accomplices. As they began speeding away, they collided with two other vehicles. One of the vehicles caught fire, and two people were killed. A juvenile petition was sustained for attempted robbery (§§ 664, 211) and two counts of vehicular manslaughter with gross negligence (§ 192.3, subd. (a)). Defendant was committed to the California Youth Authority. He was discharged on parole on May 15, 1984. Ten days later, on May 25, 1984, defendant was arrested for using phenycylidine, for which he was sentenced to 30 days in jail. On July 5, 1985, defendant committed robbery, his first strike offense. Defendant was paroled on October 4, 1987. Only 10 days later, on October 14, 1987, defendant stole a purse from a woman, whom he punched and knocked to the ground. He was charged with robbery, but pleaded guilty to grand theft person (§ 487.2). He was sentenced to 365 days in county jail with 3 years probation. While still on probation, on May 7, 1989, defendant was convicted of petty theft (§ 484). He gave the arresting officers a false name and date of birth. Defendant was placed on summary probation for 24 months, and sentenced to 15 days in jail. On February 26, 1993, defendant committed his second robbery strike. A few weeks later he threatened the 12-year-old robbery victim, for which he was convicted of dissuading a witness by force and fear. Defendant pleaded guilty and admitted to use of a weapon in commission of the robbery. He was sentenced to seven years in prison. Defendant was released on parole on November 16, 1996. On January 2, 1997, he committed the commitment offenses, and was sentenced to 26 years-to-life in prison under the three strikes law.

While incarcerated, defendant engaged in substantial misconduct. He committed 15 serious rules violations. On February 25, 1988, defendant was found guilty of possession of methamphetamine. He was found guilty of possessing inmate-manufactured alcohol on September 14, 2000. Defendant suffered a rules violation for fighting on February 25, 2003. He refused to comply when officers instructed him to stop fighting, and had to be subdued with pepper spray and a baton. Defendant was found guilty of mutual combat on October 21, 2004, and again on April 24, 2005. He failed to comply with officer's orders in both instances, and again had to be subdued with pepper spray. Defendant was found guilty of participation in a riot on June 2, 2005. On

6

May 15, 2006, and on October 4, 2007, defendant was again found guilty of mutual combat. He was noncompliant on both occasions. Additional staff were required to subdue him in the first incident, and he was pepper-sprayed in the second. On May 28, 2009, defendant disobeyed an order to return to his cell. Defendant acquired three more rules violations for fighting on April 22, 2009, June 30, 2009, and July 25, 2009. On August 11, 2009, he committed battery on another inmate causing serious injury. Defendant was found guilty of fighting on October 8, 2009, and fighting resulting in the use of force on November 15, 2011. In the November incident both pepper spray and use of a baton were required to subdue him. Defendant suffered a rules violation for willful participation in a riot on February 29, 2012. He was found guilty of battery on an inmate on September 3, 2012.

While incarcerated for the commitment offenses, defendant also received counseling chronos for excessively touching a visitor, manipulation of staff, and theft of state property. Defendant's California Static Risk Assessment score indicated that he had a moderate risk of incurring a felony arrest within three years of release to parole. At the time of the suitability hearing defendant had a prison classification score of 130,[7] and was a level IV prisoner.[8]

**Trial Court's Ruling**

The court denied defendant's petition, finding by a preponderance of the evidence that defendant posed an unreasonable risk of danger to public safety. It considered defendant's criminal history, his disciplinary history while in prison, his minimal participation in rehabilitation programs, his age, and his plan for transition after release. The court stated that: Defendant "ha[d] a lengthy history of committing crimes when free from custody, even when on parole or probation. Indeed, his criminal activity began

[7] The mandatory minimum score for an inmate with a life sentence is 19.

[8] Level IV is the highest level of security in the prison system.

when he was only 10 years old. When he was 13 years old, he participated in an attempted purse snatching that resulted in the death of two individuals when an accident occurred while [defendant] and his cohorts were fleeing the scene. [¶] Despite commitments to the California Youth Authority, local jail, and prison, [defendant] has continued his pattern of criminal behavior without regard for the consequences. His criminal behavior consists largely of theft crimes, but [defendant] shows a willingness to resort to violence or threats of violence when confronted during the commission of the theft crimes." The court found that defendant's criminal history continued to be relevant to assessment of future risk, in light of his custodial misconduct and lack of significant rehabilitative programming. Defendant's institutional behavior, including numerous rules violations, was indicative of current dangerousness. The rules violations included "six [rules violations] for fighting, four [] for mutual combat, and two [] for participation in a riot—all violent acts." Defendant committed at least one rules violation during each year of his incarceration, except for 2008 and 2010. He "exhibited a willingness to engage in multiple violent and aggressive acts . . . ." Defendant also refused to comply with correctional officers in almost every instance. He had participated in very limited rehabilitative programming for substance abuse, and no programming for anger management. Defendant had a very high classification score, that appeared to increase substantially over time. Although at 49 years old defendant was of an age where the risk of re-offending is statistically lower, his consistent and recent rules violations indicated that he had not "aged out" of criminal behavior. Defendant also presented very limited evidence of a transition plan that would prevent him from substance abuse, which had fuelled his theft crimes. Taking all of these factors into consideration, the court denied defendant's petition for recall of his sentence.

## DISCUSSION

**Court's Discretion**

8

Defendant contends that the court abused its discretion, because it did not address how the factors it considered would lead to the conclusion that there was an unreasonable risk he would commit a "super strike" offense, as required for denial of a petition for resentencing by section 1170.18. As we previously stated, we reject defendant's proposed definition of "unreasonable risk" absent a decision from our Supreme Court. Defendant has not argued that the trial court abused its discretion in finding he presented an unreasonable risk to public safety under the currently accepted standard, and has arguably forfeited that argument. Even if it was preserved, the contention lacks merit.

The Act gives the court broad discretion in determining whether the petitioner poses an unreasonable risk. It lists multiple factors that the court "may" consider, including the petitioner's criminal history (encompassing the nature of the crimes, injuries inflicted, length of sentence, and remoteness in time), his disciplinary record while in prison, and any efforts made at rehabilitation. (§ 1170.126, subd. (g).)

The trial court here considered all of these factors and found defendant's history contained strong indicia that he would pose an unreasonable risk of danger to public safety. The court considered that defendant had a long and consistent criminal history, and that he had not been deterred by any of the many and various punishments he suffered. Defendant's crimes, though somewhat remote in time, were highly relevant in light of the fact that he continued to accrue rules violations with impressive regularity over more than a decade of incarceration. His misconduct in prison was at least as violent, if not more, than his various criminal offenses. He displayed an escalating pattern of criminal activity and a total disregard for the law. In almost every incident defendant presented as unrelenting, and the use of pepper spray and other force were required to subdue him. Given his record of crime and misconduct, the trial court could reasonably conclude that he posed an unreasonable risk of danger to public safety. The court observed that defendant's theft crimes were fueled by substance abuse and anger, but that defendant had done little to address his addiction and nothing to improve his anger management. The court also based its decision on defendant's limited evidence of

9

a transition plan.[9] It noted that, given his history of drug abuse and theft crimes, defendant would require a structured transition to prevent him from recidivism. The court acknowledged that, at 49 years of age, defendant was approaching the point where he would be statistically less likely to reoffend, but found defendant's recent violent rules violations established that age had not diminished his criminal propensities.

In light of defendant's long history of crime, his regular and violent misconduct while incarcerated, his lack of participation in programs that would help to rehabilitate and prepare him for a successful re-entry into society, and his failure to create a viable transition plan, we cannot say that the trial court abused its discretion in determining that defendant posed an unreasonable threat of danger to public safety.

**DISPOSITION**

The order denying defendant's petition for recall of sentence is affirmed.


KRIEGLER, J.

We concur:


TURNER, P.J.


BAKER, J.

---

[9] Evidence of defendant's transition plan consisted of a single letter confirming that he would be offered employment in El Paso, Texas, subsequent to release.

10